BEER, Judge.
Franklin Printing Company sued Richard Collin, Two Plus Graphic Coordinators, Michael Ledet, individually, and Colortronics, Inc. to collect its bill for folding and collating approximately 20,000 copies of New Orleans Restaurant Guide. Colortronics cross claimed against Collin, Two Plus and Ledet for such amount as it might be obliged to pay Franklin. Colortronics also sued Collin, Ledet and Two Plus for breach of contract and sought payment of $16,595.68 for printing and storing New Orleans Restaurant Guide. Collin and Two Plus filed a recon-ventional demand against Franklin and cross claimed against Colortronics for loss of profit and damages. All actions were consolidated for trial and referred by the trial judge to the commissioner. After a six-day hearing, the commissioner reported his findings and made a recommendation for disposition which was adopted by the trial judge as follows:
Judgment in favor of Franklin and against Colortronics in the amount of $3,608.88 plus interest from date of judicial demand;
Judgment in favor of Franklin and against Collin in the amount of $2,695.08 plus interest from date of judicial demand;
Judgment in favor of Colortronics and against Collin in the amount of $16,-255.30.
All other actions dismissed.
The judgment was suspensively appealed by Collin, and answers to the appeal were filed by Colortronics and Franklin. For clarity, we point out that, at all times pertinent, Michael Ledet, president of Two Plus, was acting on behalf of Richard Collin.
In this capacity, Ledet contracted with Colortronics to print 30,000 copies of New Orleans Restaurant Guide. The bid submitted by Colortronics pursuant to their letter of April 22, 1976, gave price quotations for specified quantities and contained the proviso: “It will be necessary that we have 60 working days from the date of your approval for completion of the job.”
The record supports a conclusion that those 60 working days were to commence upon the final submission of all of the art work necessary to complete the job. Subsequently, however, Ledet requested that the work be done in 45 days. Colortronics agreed to “attempt to complete” the job, but at a premium price with overtime charges. Subsequently, Ledet confirmed an agreement with Colortronics for 25,000 copies “as per the April 22, 1976 quotation” (noted above). Notwithstanding this, on August 11, 1976, in a letter from Kenneth Friend (agent of Colortronics) to Ledet (acting on behalf of Collin), Colortronics agreed *1325 to produce 30,000 copies of the book in substantial accordance with the original bid. Ledet signed the new agreement on August 11, 1976, and returned it to Colortronics. The remaining art work was submitted intermittently through the rest of August and September. Colortronics then subcontracted the folding and collating work to Franklin Printing Company at a total price of $3,644 for 30,000 books. Other production work subcontracted to Rivas Printing Company is not involved in this litigation.
On September 16, 1976, Ledet called a meeting with representatives of Colortron-ics and Franklin. At this meeting, Ledet emphasized that the work should be completed as soon as possible to get the book ready for the Christmas market. Still acting in behalf of Collin, Ledet apparently authorized Franklin to work overtime in order to meet that deadline and to bill Collin directly for the additional cost of the overtime.
Following this meeting, Colortronics wrote Ledet stating “(we) cannot guarantee the completion date of September 24,1976.” The letter notes that the art work from Ledet was late and notes additional problems. Thereafter, Colortronics delivered a complete set of signatures (a 24-page sequence of pages) to Franklin on September 28 or 29,1976, so that Franklin’s part in the final production of the book could commence. At this point in time, Ledet requested that Colortronics (and Franklin) concentrate on finishing 20,000 copies (instead of 30,000) due to Collin’s contractual obligation to Louisiana News.
In early October, approximately 19,200 copies were accepted by Collin, who personally distributed this quantity to various local wholesale and retail outlets. Thereafter, Collin learned that Franklin’s total bill was $9,261.60 for the work they had done on 19,200 books, including their overtime charges. Ledet contacted Franklin and instructed them to cease work on the remaining signatures. At this point, Collin relieved Ledet of his authority to act in Collin’s behalf and also refused to pay Franklin’s bill for $9,261.60. In early November, 1976, Colortronics attempted to pick up the remaining signatures from Franklin, but they refused to release them until payment of their bill had been received. After further communications, the remaining copies were picked up from Franklin by Colortronics on November 16, 1976. Those copies were completed by Col-ortronics around the first week of January, 1977, and they informed Collin that he should pick up the books and pay their bill. Collin declined to accept delivery, stating that the matter was in the hands of his attorney. These lawsuits followed.
On appeal, Franklin contends the trial court erred by not awarding them the total amount of their claim against Collin (minus the amount Franklin is to receive from Col-ortronics). Colortronics contends the trial court erred by not recognizing their cross claim against Collin for overtime charges of $2,130, storage charges of $75 per month commencing January, 1977, and interest from the date of judicial demand, and their third party demand against Collin for $1,172.88, plus interest from date of judicial demand, which they were obliged to pay Franklin. Collin contends that the trial court erred in accepting the recommended judgment of the commissioner, in failing to remand the case for failure to take evidence excluded by the commissioner, and in failing to award damages to him.
Collin’s counsel vigorously contends that the commissioner’s rulings consistently interfered with his right to confront and cross-examine various witnesses, that he (the commissioner) prejudged substantial issues in the case, and overtly advocated the cause of certain parties to the exclusion of others. However, a review of the transcript fails to support these serious charges. For example, the cross-examination of witness Fritz Gannon by Collin’s counsel was limited because Gannon was not qualified as an expert witness to respond to hypothetical questions. In several instances, counsel for Collin apparently withheld further questions, seemingly frustrated by the commissioner’s rulings. However, we find that the commissioner limited some testimo *1326 ny due solely to its repetitiousness and the length of time already consumed.
Counsel also asserts that he was denied the right to make a proffer in accordance with LSA-C.C.P. art. 1636. The transcript indicates otherwise:
“MR. REED: And I would like to make a proffer and the proffer I’ll make a point by questioning the witness or making an oral proffer.
THE COURT: You can make it any time, but not right now.
MR. REED: I don’t know.
THE COURT: I’ll not take up the court’s time in reference to those documents. You may offer them as a proffer, but I’ll not take the court’s time to hear the testimony at this time. You can get a stenographer and do it.
MR. REED: I have heard you say sealed envelope and I’ll ask since I do not know of any provisions that provides for that encumberance for a proffer. But the Code provides the litigations for appellate rights so that I may make a proffer in the court.
THE COURT: You have the opportunity to proffer that evidence. That paper is the only thing that will not be admitted. And if you want to enter them as a proffer, go ahead. But we’re not going to talk about the proffer. (Emphasis supplied.) Vol. VII, p. 10 & 11.”
The information allegedly confirmed by the proffered evidence could have been placed in the record. The commissioner gave counsel an opportunity to place same in the record, observing:
“Let’s do this, Mr. Reed, I’m reading right now on the penalties for failure to comply with discovery and I see that they are permissive rather than mandatory. If you’ll turn over copies of those to Mr. Arata and to Mr. Fiasconaro now maybe they won’t be so surprised by Tuesday. We’re going to convene until then. (Emphasis added.)”
After counsel failed to comply with the clear intent of the commissioner’s ruling to the effect that opposing counsel should have an opportunity to study the proffered exhibits, the commissioner’s action was justified when, on the Tuesday noted above, no copies had been provided.
Appellant finally contends that the commissioner was serving in a manner inconsistent with Louisiana Constitution of 1974, Article V, Section 22, which provides:
“Election. Except as otherwise provided in this Section, all judges shall be elected. Election shall be at the regular congressional election.”
The commissioner was not serving as judge and neither retained nor in any way exercised authority to render final judgments. The commissioner proceeded in accordance with LSA-R.S. 13:1171, which provides:
“F. After the testimony has been closed, the commissioner shall hear argument, and when the case is submitted, he shall prepare a written report of his findings, which shall contain the following elements:
(a) A statement of the pleadings;
(b) A statement of the facts as found by him;
(c) An opinion based on the pleadings and the facts;
(d) Such judgment as he thinks should be rendered, together with a recommendation to the judge that it be made the judgment of the court.”
The claim of unconstitutionality was neither specifically pleaded nor particularized in the lower court. It has no standing here. See Johnson v. Welsh, 334 So.2d 395 (La.Sup.1976).
The claim of Colortronics, Inc. for $2,130 overtime was rejected on a finding by the commissioner that:
“Once the delivery date was agreed upon, Colortronics had no right to demand overtime for performance in the absence of an agreed upon accelerated date of delivery. Colortronics in no uncertain terms did not agree to advance the delivery date but nonetheless did demand overtime charges to perform work which it *1327 was already contractually obligated to perform. Whether or not it chose to utilize overtime in such performance was entirely within its unfettered control. The inclusion of $720.00 in the total price as designated overtime does not alter the overall price structure since overtime was utilized to an extent greater than $720.00. Consequently the demand for overtime utilized in excess of the contractually agreed to amount must be rejected.”
Extensive testimony was taken in this six-day hearing, and the record confirms and supports the commissioner’s findings in all important respects. However, two minor adjustments are necessary:
First: The judgment against Collin in favor of Franklin for $2,695.08 should be increased to $3,798.42, based on the commissioner’s findings that Collin is liable to Franklin for the overtime incurred specifically at the instance of his agent, Ledet. According to the “Summary of Job Cost,” the total overtime involved was $4,971.30. This amount is subject to a credit of $1,172.88.[1] Thus, the net overtime due Franklin from Collin is $3,798.42 instead of $2,695.08.
Second: Interest from date of judicial demand on the judgment in favor of Colortronics, Inc. against Collin for $16,-255.30 should have been included in the judgment, same having apparently been inadvertently excluded from the judgment rendered. Civil Code Article 1938 stipulates that the legal interest is 7%, which runs from the date of judicial demand.
Accordingly, the judgment of the Civil District Court for the Parish of Orleans is amended as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Franklin Printing Company, Inc. and against Colortronics, Inc. and Malter International, Inc. in solido in the full sum of $3,608.88, together with interest from judicial demand.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Franklin Printing Company, Inc. and against Richard H. Collin, doing business as Strether and Swann Publishers in the full sum of $3,798.42, together with interest from judicial demand.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Colortronics, Inc. and against Richard H. Collin doing business as Strether and Swann Publishers in the full sum of $16,255.30, together with interest from judicial demand.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all other main and incidental demands be dismissed.
All costs are to be paid by Richard H. Collin.
As amended, the judgment is affirmed. Costs of this appeal are taxed against appellant, Richard H. Collin.

AMENDED AND AFFIRMED.

. The commissioner calculated the additional labor charges that Colortronics was responsible for, as follows:
“Franklin is also entitled to $554.40, caused when one of the signatures did not fit in sequential order in Franklin’s collating machine and had to be redone in two installments rather than one and which also caused additional work in collating the folder signatures; $48.60 for extra jogging required; $14.40 for extra cutting required and $360.00 for the folding of approximately 5,000 signatures. These amounts total $977.40 and the Court adds 20% or $195.48 for profit and overhead. These extras then total $1,172.88.” (Commissioner’s Report, p. 8.)